Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/09/2018 08:16 AM CST

Dukhan Mumin, appellant, v. Scott Frakes, director,
Nebraska Department of Correctional Services,
and Brian Gage, warden, Tecumseh State
Correctional Institution, appellees,

___ N.W.2d ___

Filed December 15, 2017.    No. S-16-327.

1. **Affidavits: Appeal and Error.** A district court's denial of in forma pauperis status is reviewed de novo on the record based on the transcript of the hearing or written statement of the court.
2. **Statutes: Affidavits.** Neb. Rev. Stat. § 25-2301.02 (Reissue 2016) contemplates only two circumstances under which a court may deny leave to proceed in forma pauperis, assuming the application and affidavit is proper: (1) when the evidentiary hearing shows the applicant has sufficient funds to pay costs, fees, or security and (2) when the court concludes the applicant is asserting legal positions which are frivolous or malicious.
3. **Affidavits.** If the basis for denial of in forma pauperis status is frivolousness, the court must provide a written statement of its reasons, findings, and conclusions.
4. **Constitutional Law: Statutes: Affidavits: Appeal and Error.** The in forma pauperis statutes contemplate two circumstances under which a court has no authority to deny a proper application and affidavit to proceed in forma pauperis. The first circumstance is expressly laid out in statute: A court shall not deny an in forma pauperis application on the basis that the applicant's legal positions are frivolous or malicious if to do so would deny the applicant his or her constitutional right to appeal in a felony case. The second circumstance is one which this court has found to be implicit in the statutory scheme: Because an applicant has a statutory right to interlocutory appellate review of an order denying an in forma pauperis application, a court may not deny an application to proceed in forma pauperis when the applicant is seeking to appeal from an order denying an earlier in forma pauperis application.

5. **Statutes: Affidavits: Appeal and Error.** Although the in forma pauperis statutes give a trial court the authority to deny an application requested to commence, prosecute, defend, or appeal a case in forma pauperis if the court finds the applicant has sufficient funds or the legal positions being asserted therein are frivolous or malicious, a trial court does not have the same authority once an in forma pauperis application is denied and the applicant seeks interlocutory appellate review of that denial.

6. **Affidavits: Appeal and Error.** When an application to proceed in forma pauperis is denied by the trial court and the applicant seeks leave to proceed in forma pauperis to obtain appellate review of that denial, a trial court does not have the authority to issue an order that would interfere with such appellate review.

Petition for further review from the Court of Appeals, Riedmann, Bishop, and Arterburn, Judges, on appeal thereto from the District Court for Johnson County, Daniel E. Bryan, Jr., Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Dukhan Mumin, pro se.

Douglas J. Peterson, Attorney General, and James D. Smith for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Stacy, J.

Dukhan Mumin seeks further review of a Nebraska Court of Appeals opinion addressing his successive appeals from district court orders denying successive applications to proceed in forma pauperis (IFP). On further review, we clarify the procedure trial courts should follow in ruling on successive applications to proceed IFP, as well as the procedure appellate courts should follow in reviewing successive appeals from the denial of IFP applications. We ultimately reverse the decision of the Court of Appeals and remand the matter with specific directions.

## I. BACKGROUND

In 2013, Mumin was convicted of possession of cocaine. He was found to be a habitual criminal and was sentenced to imprisonment for a term of 10 to 20 years. His conviction and sentence were affirmed on direct appeal to the Court of Appeals in an unpublished memorandum opinion in case No. A-13-783 filed on June 6, 2014.

### 1. IFP Applications

In March 2016, Mumin filed a pro se petition for writ of habeas corpus in the district court for Johnson County, Nebraska. Along with the petition, he filed an affidavit and application for leave to proceed IFP. The district court denied the IFP application, finding the legal positions Mumin advanced in his habeas petition were frivolous.

Mumin filed a timely notice of appeal from the order denying his IFP application (first appeal). In lieu of the statutory docket fee on appeal,[1] he filed an application and affidavit to proceed IFP on appeal. The district court denied Mumin's application to proceed IFP on appeal, reasoning again that his habeas petition was frivolous.

Mumin then timely appealed from the district court's order denying his application to proceed IFP on appeal (second appeal). The Clerk of the Supreme Court and Court of Appeals docketed both the first and second appeals under the same case number.

### 2. Court of Appeals' Opinion

In a memorandum opinion,[2] the Court of Appeals addressed Mumin's successive IFP appeals using the procedure we outlined in *State v. Carter.*[3] First, the Court of Appeals addressed the second appeal and concluded it had jurisdiction over that

---

[1] See Neb. Rev. Stat. §§ 25-1912 and 25-1916 (Reissue 2016).

[2] *Mumin v. Frakes*, No. A-16-327, 2017 WL 672286 (Neb. App. Feb. 21, 2017) (selected for posting to court website).

[3] *State v. Carter*, 292 Neb. 16, 870 N.W.2d 641 (2015).

appeal, because Mumin had filed a timely notice of appeal from the order denying IFP on appeal, accompanied by a proper poverty affidavit and IFP application. On the merits of the second appeal, the Court of Appeals analyzed, de novo on the record, whether the district court correctly concluded the underlying habeas petition was frivolous. It concluded Mumin was asserting a frivolous legal position in his habeas petition and, thus, affirmed the district court's order denying IFP on appeal.

The Court of Appeals then held the first appeal under submission to give Mumin an opportunity to pay the statutory docket fee on appeal, reasoning that "pursuant to [Neb. Rev. Stat.] § 25-2301.02(1) [(Reissue 2016)], we will not have jurisdiction of the first appeal unless Mumin pays the statutory docket fee within 30 days of the date of release of this opinion."[4]

Mumin timely filed a petition for further review, which we granted.

## II. ASSIGNMENT OF ERROR

Mumin assigns it was error to conclude his habeas petition was frivolous.

## III. STANDARD OF REVIEW

[1] A district court's denial of IFP status is reviewed de novo on the record based on the transcript of the hearing or written statement of the court.[5]

## IV. ANALYSIS

We granted further review to address the proper procedure for trial and appellate courts to follow when considering successive applications to proceed IFP and successive appeals from orders denying IFP. Mumin's appeal involves what has

---

[4] *Mumin v. Frakes, supra* note 2, 2017 WL 672286 at *3.

[5] Neb. Rev. Stat. § 25-2301.02(2) (Reissue 2016); *State v. Carter, supra* note 3.

become a relatively common factual scenario: (1) A trial court denies an IFP application to commence a case; (2) the applicant appeals the denial of IFP and, in lieu of the statutory docket fee on appeal, asks to proceed IFP on appeal; (3) the trial court denies the application to proceed IFP on appeal; and (4) the applicant then appeals the second IFP denial.[6] In this common example, the potential cycle of successive IFP denials and appeals is seemingly endless.

Because successive IFP denials, and appeals therefrom, strain the limited resources of our judicial system and delay final resolution of matters brought before the court, we take this opportunity to clarify certain aspects of the IFP process which appear to have generated confusion in both the trial and appellate courts. We consider two questions on further review: (1) When does a trial court have authority to deny an application to proceed IFP on appeal? (2) When presented with successive IFP appeals, should an appellate court follow the procedure articulated in *Glass v. Kenney*[7] or the procedure articulated in *State v. Carter*?[8]

To answer these questions, we begin with an overview of the statutory IFP scheme. We then explain and contrast our holdings in *Glass* and *Carter,* after which we analyze Mumin's successive IFP appeals under the *Glass* procedure. Finally, we highlight an additional consideration for trial courts presented with IFP applications in cases such as Mumin's, where no prepayment of fees or costs was required.[9]

## 1. IFP Statutes

Nebraska's IFP statutes are codified at Neb. Rev. Stat. §§ 25-2301 to 25-2310 (Reissue 2016). Those statutes define IFP as "the permission given by the court for a party to

---

[6] See *Glass v. Kenney*, 268 Neb. 704, 687 N.W.2d 907 (2004).

[7] *Id.*

[8] *State v. Carter, supra* note 3.

[9] See Neb. Rev. Stat. § 29-2824 (Reissue 2016).

proceed without prepayment of fees and costs or security."[10] The IFP statutes authorize any county or state court, except the Workers' Compensation Court, to authorize "the commencement, prosecution, defense, or appeal therein, of a civil or criminal case in forma pauperis."[11] The IFP statutes define "[c]ase" to include "any suit, action, or proceeding."[12]

The requirements of an IFP application are set out in statute. An application to proceed IFP "shall include an affidavit stating that the affiant is unable to pay the fees and costs or give security required to proceed with the case, the nature of the action, defense, or appeal, and the affiant's belief that he or she is entitled to redress."[13] We have not construed this language to mandate separate poverty affidavits and IFP applications; instead, we hold that as long as the poverty affidavit itself includes an indication that the party is applying for IFP status, § 25-2301.01 does not require that a separate IFP application be filed in addition to the poverty affidavit.[14]

Assuming a proper IFP application and affidavit is filed, the IFP statutes mandate that leave to proceed IFP "shall be granted unless there is an objection that the party filing the application (a) has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious."[15] An objection may be raised by "any interested person" or by the court on its own motion.[16] An objection claiming that an applicant has sufficient funds or is asserting frivolous or malicious legal positions must be made within 30 days after the IFP application is filed, but an objection claiming that the IFP application was fraudulent may be made at any

---

[10] § 25-2301(2).

[11] § 25-2301.01.

[12] § 25-2301(1).

[13] § 25-2301.01.

[14] *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001).

[15] § 25-2301.02(1).

[16] *Id.*

time.[17] When an objection is filed, the court must conduct an evidentiary hearing on the objection, except when the objection is on the court's own motion on grounds the applicant is asserting legal positions which are frivolous or malicious.[18]

[2,3] Section 25-2301.02 contemplates only two circumstances under which a court may deny leave to proceed IFP, assuming the application and affidavit is proper: (1) when the evidentiary hearing shows the applicant has sufficient funds to pay costs, fees, or security and (2) when the court concludes the applicant is asserting legal positions which are frivolous or malicious.[19] If the basis for denying IFP is frivolousness, the court must provide a written statement of its reasons, findings, and conclusions.[20]

[4] Additionally, the IFP statutory scheme contemplates two circumstances under which a court has no authority to deny a proper application and affidavit to proceed IFP. The first circumstance is expressly laid out in § 25-2301.02(1): A court "shall not deny" an IFP application on the basis that the applicant's legal positions are frivolous or malicious if to do so would deny the applicant his or her constitutional right to appeal in a felony case. The second circumstance is one which this court has found to be implicit in the IFP statutory scheme: Because an applicant has a statutory right to interlocutory appellate review of an order denying an IFP application,[21] a court does not have authority to interfere with such appellate review by denying a request to proceed IFP in order to obtain appellate review of an order denying an earlier IFP application.[22]

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Glass v. Kenney, supra* note 6; *Jacob v. Schlichtman*, 261 Neb. 169, 622 N.W.2d 852 (2001).

[22] *Glass v. Kenney, supra* note 6.

Finally, under the IFP statutory scheme, when an IFP application is denied, the applicant has two choices: (1) to proceed with the matter upon payment of fees, costs, or security[23] or (2) to appeal the order denying IFP.[24] If the applicant elects to appeal from the denial of IFP, he or she may ask the court for a transcript of the IFP hearing and the court is required by statute to "order the transcript to be prepared and the cost shall be paid by the county in the same manner as other claims are paid."[25] For the sake of completeness, we also note that IFP applications filed by prisoners seeking IFP status to file a civil action are subject to an additional statute, Neb. Rev. Stat. § 25-3401 (Reissue 2016), but that statute does not apply to habeas corpus relief[26] and is not relevant to the instant appeal.

## 2. Successive IFP Appeals

Our modern IFP jurisprudence has articulated two different procedures for appellate courts to follow when reviewing successive appeals involving the denial of IFP. Generally speaking, when the first appeal is from an order denying a request to proceed IFP, the procedure on appeal is set out in *Glass v. Kenney.*[27] But when the first appeal is not from an order denying IFP, but instead is from a judgment or final order, the proper appellate review procedure is set out in *State v. Carter*.[28] We discuss both cases, and procedures, below.

### (a) *Glass v. Kenney*

*Glass v. Kenney*,[29] decided in 2004, involved the same factual situation present in the instant appeals. An inmate

---

[23] § 25-2301.02(1).

[24] § 25-2301.02(2); *Glass v. Kenney, supra* note 6.

[25] § 25-2301.02(2).

[26] § 25-3401(1)(a).

[27] *Glass v. Kenney, supra* note 6.

[28] *State v. Carter, supra* note 3.

[29] *Glass v. Kenney, supra* note 6.

filed an application and affidavit to proceed IFP in connection with filing a pro se petition for writ of habeas corpus. The trial court denied the IFP application finding the allegations in the habeas petition were frivolous. The inmate filed a notice of appeal from the order denying IFP (first appeal) and filed therewith an application and affidavit to proceed IFP on appeal. The trial court denied the application to proceed IFP on appeal, reasoning again that the habeas petition was frivolous. The inmate then filed a notice of appeal from the second IFP denial (second appeal), along with another application and affidavit to proceed IFP on appeal. The first appeal and second appeal were docketed separately, but eventually were consolidated.

The State argued there was no appellate jurisdiction over the inmate's second appeal, because he had not paid the statutory docket fee.[30] We rejected this argument based on the language of the IFP statutes and our prior case law. Specifically, we found that when an application to proceed IFP is denied, the applicant may "either proceed with the trial action or appeal the ruling denying [IFP] status."[31] We emphasized that under § 25-2301.02, there is a "statutory right of interlocutory appellate review of a decision denying [IFP] eligibility."[32] Thus, we held that the appeal from the denial of the application to proceed IFP on appeal was a "statutorily authorized interlocutory appeal which we will entertain if other jurisdictional requirements are met."[33] We explained that in an appeal from a denial of IFP status on appeal, a poverty affidavit serves as a substitute for the docket fee otherwise required on appeal, so an appellate court obtains jurisdiction over the appeal "'upon the timely filing of a notice of appeal and a proper [IFP]

---

[30] See § 25-1912.

[31] *Glass v. Kenney, supra* note 6, 268 Neb. at 709, 687 N.W.2d at 911, citing *Martin v. McGinn*, 265 Neb. 403, 657 N.W.2d 217 (2003).

[32] *Id.*, citing *Jacob v. Schlichtman, supra* note 21.

[33] *Glass v. Kenney, supra* note 6.

application and affidavit.'"[34] We concluded we had jurisdiction over the second appeal, because the inmate had filed a timely notice of appeal, a proper application to proceed IFP, and a poverty affidavit.

After concluding we had jurisdiction over the second appeal, we addressed the merits of that appeal. We ultimately concluded the trial court erred in denying the inmate's application to proceed IFP on appeal, because doing so effectively denied his statutory right to interlocutory appellate review of an order denying IFP. Because the trial court was "without authority" to issue an order interfering with that right,[35] we resolved the second appeal by reversing and vacating the trial court's order denying the application to proceed IFP on appeal.

After resolving the second appeal, *Glass* addressed the merits of the first appeal. In the first appeal, the inmate challenged the trial court's denial of his original application to proceed IFP filed along with his habeas petition. *Glass* reviewed the legal positions asserted in the habeas petition, found they were frivolous, and concluded the trial court had not erred in denying the inmate's first IFP application on that basis. Ultimately, the resolution of *Glass* was that the second appeal was reversed and vacated in order to reach the first appeal, and the first appeal was affirmed.

### (b) *State v. Carter*

In *State v. Carter*,[36] decided in 2015, we applied the basic rationale of *Glass* to slightly different procedural facts. In *Carter*, the inmate filed a pro se motion for postconviction relief, which the trial court denied without conducting an evidentiary hearing. The inmate then filed an appeal from the order denying postconviction relief (first appeal) and, in lieu

---

[34] *Id*. at 709, 687 N.W.2d at 911, quoting *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002).

[35] *Id*. at 710, 687 N.W.2d at 912.

[36] *State v. Carter, supra* note 3.

of the statutory docket fee, filed an application and affidavit to proceed IFP on appeal. The trial court denied the IFP application, reasoning the underlying postconviction motion was frivolous. At that point, the inmate had 30 days to either pay the statutory docket fee and proceed with the appeal or appeal the denial of IFP.[37] The inmate chose to file a notice of appeal from the order denying IFP on appeal (second appeal), accompanied by another application and affidavit to proceed IFP on appeal. The record on appeal did not contain a ruling on the second IFP application.

*Carter* recognized that the procedural posture of the case differed slightly from that considered in *Glass.*[38] However, on the threshold question whether the appellate court had jurisdiction over the second appeal despite the inmate's failure to pay the statutory docket fee, the court in *Carter* concluded the "same principles" as were discussed in *Glass* generally applied.[39] Consequently, in *Carter*, just as in *Glass*, we concluded we had jurisdiction over the second appeal, because the inmate had filed a proper application and affidavit to proceed IFP along with his timely notice of appeal.

*Carter* then proceeded to consider the merits of the inmate's second appeal, which challenged the denial of his "application to proceed IFP on appeal."[40] In doing so, *Carter* observed the general rule that a trial court has the authority to deny an IFP application (whether IFP is initially requested to commence an action or to take an appeal) if it determines the applicant is asserting legal positions that are frivolous or malicious.[41] We then reviewed de novo the trial court's conclusion that the inmate should not be granted leave to appeal IFP because his postconviction motion was frivolous. We agreed the inmate

---

[37] See *Glass v. Kenney, supra* note 6, citing *Martin v. McGinn, supra* note 31.

[38] *State v. Carter, supra* note 3.

[39] *Id*. at 20, 870 N.W.2d at 644.

[40] *Id*. at 21, 870 N.W.2d at 644.

[41] See § 25-2301.02(1)

was asserting "only frivolous legal positions" in his post-conviction motion, and thus resolved the second appeal (the inmate's appeal from the denial of IFP on appeal) by affirming the district court's order.[42] As to the inmate's first appeal (from the final order denying postconviction relief without a hearing), we reasoned:

> [P]ursuant to § 25-2301.02(1), we will not have jurisdiction of the first appeal unless [the inmate] pays the statutory docket fee within 30 days of the date of release of this opinion. We therefore hold the first appeal under submission for payment of the statutory docket fee. If [the inmate] fails to timely pay the statutory docket fee, his first appeal will be dismissed for lack of jurisdiction.[43]

The inmate subsequently paid the statutory docket fee, and in a brief per curiam supplemental opinion, we considered the merits of his first appeal from the order denying postconviction relief. We affirmed the denial of postconviction relief, explaining: "As was foreshadowed in [our earlier opinion], we find [the inmate's] motion for postconviction relief to be meritless."[44]

### (c) Contrasting *Glass* and *Carter*

We have not previously explained the rationale behind the different appellate procedures followed in *Glass* and *Carter,* but emphasize now that the appellate procedure was driven by the nature of the first appeal and the differing points at which the applicants sought interlocutory appellate review of the trial court's order denying IFP.

In *Glass*, the first appeal was from the denial of a request to proceed IFP to commence a case, and the second appeal

---

[42] *State v. Carter, supra* note 3, 292 Neb. at 23, 870 N.W.2d at 645.

[43] *Id*. at 23, 870 N.W.2d at 646.

[44] *State v. Carter*, 292 Neb. 481, 481, 877 N.W.2d 211, 211 (2016) (supplemental opinion), *cert. denied* ___ U.S. ___, 137 S. Ct. 151, 196 L. Ed. 2d 115.

was from the denial of IFP to seek interlocutory appellate review of the first IFP denial. But in *Carter,* the first appeal was from a final order denying postconviction relief, and the second appeal was from the denial of the request to proceed IFP on appeal.

[5,6] This variation in the factual posture of *Glass* and *Carter* significantly affects the procedural analysis on appeal. This is so, because although the IFP statutory scheme gives a trial court the authority to deny an IFP application requested to commence, prosecute, defend, or appeal a case if the court finds the applicant has sufficient funds or the legal positions being asserted therein are frivolous or malicious,[45] a trial court does not have the same authority once an IFP application is denied and the applicant wishes to seek interlocutory appellate review of the denial.[46] When an IFP application is denied and the applicant seeks leave to proceed IFP to obtain appellate review of that denial, the trial court does not have authority to issue an order that would interfere with such appellate review.[47] Otherwise, the IFP applicant would be denied his or her statutory right to appellate review of the order denying IFP status.

### (d) Mumin's Appeals Are Governed by *Glass*, Not *Carter*

In the present case, the Court of Appeals followed the appellate procedure outlined in *Carter* when considering Mumin's successive IFP appeals. But given the procedural posture of Mumin's first appeal (which was from an order denying IFP to commence a case), the proper procedure was that outlined in *Glass*, not *Carter*.

Mumin does not directly challenge the appellate procedure applied in this case; rather, his sole assignment is that the court erred in finding his habeas petition was frivolous.

---

[45] § 25-2301.02(1)(a) and (b).

[46] *Glass v. Kenney, supra* note 6, citing *Jacob v. Schlichtman, supra* note 21.

[47] *Id.*

Reviewing the matter de novo on the record and applying the appellate procedure from *Glass*, we find no merit to Mumin's assignment.

An appellate court's threshold consideration, whether analyzing successive IFP appeals under *Glass* or *Carter,* is to decide whether it has jurisdiction over the second appeal. Here, the Court of Appeals correctly concluded it had jurisdiction over the second appeal. An appellate court obtains jurisdiction over an appeal "'upon the timely filing of a notice of appeal and a proper [IFP] application and affidavit.'"[48] Mumin timely filed his second notice of appeal, along with a proper application and affidavit to proceed IFP on appeal. Similarly, we conclude this court has jurisdiction on further review, because Mumin timely filed his petition for further review and his poverty affidavit serves as a substitute for the statutory docket fee otherwise required.[49]

### (i) Merits of Second Appeal

Having confirmed jurisdiction, we consider the substance of the second appeal, in which Mumin seeks appellate review of the district court's order denying his application to proceed IFP on appeal. As we explained in *Glass*, under the statutory IFP scheme, Mumin has a right to interlocutory appellate review of an order denying IFP status to commence a case.[50] Because the district court's second order denying IFP interfered with Mumin's statutory right to appeal the first IFP denial, the district court was without authority to issue the second denial.[51] Therefore, we conclude the district court erred in denying Mumin's application to proceed IFP

---

[48] *Id.* at 709, 687 N.W.2d at 911, quoting *State v. Jones, supra* note 34.

[49] See Neb. Rev. Stat. § 33-103.01 (Reissue 2016) and Neb. Ct. R. App. P. §§ 2-101(G)(1)(b) and 2-102(F)(1) (rev. 2015). Accord *Glass v. Kenney, supra* note 6, citing *In re Interest of Noelle F. & Sarah F.*, 249 Neb. 628, 544 N.W.2d 509 (1996).

[50] *Glass v. Kenney, supra* note 6; *Jacob v. Schlichtman, supra* note 21.

[51] *Id.*

on appeal. To the extent the Court of Appeals affirmed the district court's order denying Mumin's request to proceed IFP on appeal, we reverse the decision and, consistent with *Glass*, remand this matter to the Court of Appeals with directions to reverse and vacate that order of the district court.[52]

### (ii) Merits of First Appeal

With respect to Mumin's first appeal, in which he seeks review of the district court's order denying his IFP application to commence his petition for writ of habeas corpus, Mumin presents the same argument on further review that he advanced to the Court of Appeals—that his sentence is void because there was insufficient evidence presented at his sentencing to support habitual criminal enhancement. Both the district court and the Court of Appeals correctly concluded that because any insufficiency of the evidence presented at the sentencing proceedings would not render Mumin's conviction or sentence void, his habeas petition asserts a frivolous legal position.[53]

On further review, Mumin argues that under the holding in *Berumen v. Casady*,[54] his sentence should be considered void. In *Berumen*, we found that a habeas petitioner had shown his enhanced sentence for second-offense driving while intoxicated was void by offering a record showing the State failed to offer any evidence of a first offense. The holding in *Berumen* was based in part on the proposition that a collateral attack may be made on the validity of a conviction used for enhancement, a proposition we have since rejected.[55] But more important, unlike *Berumen,* Mumin's habeas petition and the documents attached thereto show the State offered documentary evidence of Mumin's prior convictions, and the

---

[52] See *Glass v. Kenney, supra* note 6.

[53] See *Sanders v. Frakes*, 295 Neb. 374, 888 N.W.2d 514 (2016).

[54] *Berumen v. Casady*, 245 Neb. 936, 515 N.W.2d 816 (1994).

[55] See *id*., citing *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992), *overruled, State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999).

court specifically found the evidence supported his sentence enhancement. We therefore find that both the district court and the Court of Appeals correctly concluded that Mumin's habeas petition asserts a frivolous legal position.

But because the Court of Appeals was following the procedural framework of *Carter* rather than *Glass*, it reached this correct conclusion in the context of analyzing the second appeal rather than the first, and it then held the first appeal under submission for payment of the statutory docket fee. Under the *Glass* procedure, it should instead have reached the merits of the first appeal and concluded the district court correctly denied Mumin's original IFP application filed with his habeas petition.[56]

We thus reverse the decision and remand the matter to the Court of Appeals with directions to affirm the district court's denial of Mumin's first IFP application. Before doing so, we take this opportunity to mention another consideration when ruling on IFP applications, which we did not squarely address in either *Glass* or *Carter*.

### (e) Additional IFP Considerations

Some appeals involving successive denials of IFP arise in cases where no prepayment of fees or costs is required to commence the case in the trial court. This appeal is one such example. Mumin sought leave to proceed IFP in connection with filing a petition for writ of habeas corpus. But pursuant to Neb. Rev. Stat. § 29-2824 (Reissue 2016), "no person or officer shall have the right to demand the payment in advance of any fees" in proceedings on habeas corpus in a criminal case.[57] As a result, Mumin was able to file his habeas petition with the clerk of the Johnson County District Court without the need to prepay the filing fee. A

---

[56] See § 25-2301.02(1)(b).

[57] Accord § 2-101(G)(1)(c) (providing appellate docket fees in habeas corpus proceedings are not required in advance and will be collected at conclusion of proceeding).

similar rule applies to filing motions for postconviction relief in criminal cases.[58]

Consequently, while it was not improper for the district court to rule on the IFP application as a threshold matter, doing so was not necessary to allow Mumin to file or proceed with his habeas petition. And once the district court concluded—in the context of its IFP review—that the legal positions asserted in the habeas petition were frivolous, it would have been more efficient for the district court to rule directly on the merits of the habeas petition at the same time it ruled on the IFP application. Instead, because the district court ruled only on the IFP applications and not on the habeas petition, Mumin's habeas petition has remained unresolved awaiting resolution of the IFP denials that were appealed.

Where, as here, there is no statutory requirement for prepayment of fees or costs to file or proceed with a matter, a trial court should consider whether it may be appropriate to defer ruling on an IFP application either until such time as it appears that some payment of fees, costs, or security may be necessary to proceed or until a judgment or final order is entered. In cases where no prepayment of fees or costs is required, deferring the ruling on an IFP application would permit the court to reach the merits of the case more quickly and without potentially lengthy delays caused by interlocutory appeals from orders denying IFP.

## V. CONCLUSION

For the reasons stated above, we reverse the decision of the Court of Appeals and remand the matter with directions to reverse and vacate the order of the district court in the second appeal and, in the first appeal, to affirm the district court's denial of Mumin's original IFP application.

Reversed and remanded with directions.

Wright, J., not participating in the decision.

---

[58] See Neb. Rev. Stat. § 29-3001(2) (Reissue 2016) (providing "[c]osts shall be taxed as in habeas corpus cases").