IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CORNELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTOPHER J. CORNELL, JR., APPELLANT.

Filed December 13, 2022.    No. A-22-160.

Appeal from the District Court for Buffalo County: JOHN H. MARSH, Judge. Affirmed.

Christopher J. Cornell, Jr., pro se.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

INTRODUCTION

The Buffalo County District Court entered an order denying Christopher J. Cornell, Jr.'s request for in forma pauperis (IFP) status which was filed with the commencement of his action seeking postconviction relief. The essence of Cornell's postconviction claim was that his conviction for possession of a firearm by a prohibited person was void in that "[i]neffective counsel advised [Cornell] to enter no-contest plea in matter of weapons offense for which [Cornell was] actually innocent." In denying IFP status to Cornell, the district court determined Cornell's action asserted legal positions which were frivolous since Cornell had failed to timely appeal his conviction and sentence, and he was not claiming that DNA or forensic evidence would exonerate him. Cornell appealed and was granted IFP status on appeal. Although for reasons different than those articulated by the district court, we affirm the court's February 18, 2022, order denying IFP status to Cornell in his postconviction action.

- 1 -

BACKGROUND

CORNELL'S CONVICTIONS

On October 2, 2020, the State filed an information charging Cornell with six offenses, including possession of a firearm by a prohibited person, a Class ID felony. The State also gave notice of its intent to seek forfeiture of $3,130 seized by law enforcement from Cornell. Pursuant to a plea agreement, an amended information was filed, and Cornell pled no contest to four of the six offenses originally charged, including possession of a firearm by a prohibited person; the remaining two charges were dismissed. According to the factual basis provided by the State:

[O]n August 1st of 2020, at approximately 6:20 p.m., a trooper with the Nebraska State Patrol was on duty and observed a silver Jeep driving in excess of the posted speed limit. The trooper attempted to initiate a traffic stop on the vehicle, which at that point in time was driving in excess of 100 miles per hour.

That vehicle began to attempt to evade the trooper, then getting off the Exit 305 ramp in Hall County at a high rate of speed. When the officer began to try to initiate a traffic stop again, the vehicle failed to stop at the stop sign, lost control and crashed into a pole on the westbound off ramp. The vehicle then backed up from the pole it had just hit and then it continued to flee from the trooper.

The pursuit lasted for approximately 30 miles with the vehicle driving recklessly throughout traffic, weaving in and out of the left and right lanes, not signalling [sic] changes, continuing to drive at speeds in excess of 100 miles an hour, and passing vehicles on the shoulder.

At approximately 6:40 p.m., officers with the Kearney Police Department were able to spike the tires of the vehicle in an attempt to cease the pursuit. The vehicle was successfully spiked and then went through the median, across eastbound Interstate 80 traffic, finally coming to rest in the southbound ditch. When the trooper pulled up behind the vehicle, the occupants, which included the defendant, Christopher Cornell, got out and fled on foot.

The trooper chased the occupants south of the Interstate until Mr. Cornell and his co-defendant, . . . Overstreet, fled into a cornfield south of the Kearney Archway. These individuals remained hiding and evading law enforcement apprehension for numerous hours. It took 32 officers, 3 police service dogs, a drone and an aircraft to be able to finally flush Mr. Cornell and his co-defendant out of the field south of the Archway.

And numerous times throughout in officers' attempts to apprehend Mr. Cornell and Mr. Overstreet, they would be seen attempting to exit areas of this cornfield until they observed officers, at which time they would flee back into the cornfield in attempts to evade and obstruct officers.

Mr. Cornell was identified by his own admissions as being the driver of the vehicle at all times during the pursuit when he knew or should have known officers were trying to apprehend him. A search of the vehicle located controlled substances, U.S. currency, drug ledgers, and an AR-15.

The assault rifle, which was across the backseat in Mr. Cornell's easy access and possession, is a weapon he is prohibited from possessing as Mr. Cornell is a convicted

felon, was subject to multiple protection orders and was a fugitive from justice, making him prohibited by every possible statutory means from possessing a firearm. Those events all occurred in Buffalo County, Nebraska.

The district court specifically asked whether the defense wished to be heard regarding the factual basis; the response was "No." The court found an adequate factual basis was established for each plea; the pleas were not the result of any promise or threat; the pleas were entered knowingly, voluntarily, and intelligently; and Cornell knowingly, voluntarily, and intelligently waived his constitutional rights. The court accepted Cornell's plea of no contest to the charges in the amended information and found him guilty of the same. A presentence investigation was ordered and the case was set for sentencing.

On March 11, 2021, a sentencing hearing took place. The State pointed out that Cornell and his passenger hid for hours in a cornfield; it took "35 officers from 6 agencies, a drone, 3 police service dogs, [and] a fixed-wing aircraft to hunt them through the field." Cornell acknowledged that "[t]rying to hide, all that, was not the right decision." Cornell apologized for putting people in danger and stated that he would make better decisions in the future. The district court sentenced Cornell to 1 to 2 years' imprisonment for count I (operating motor vehicle to avoid arrest, Class IV felony), 3 to 10 years' imprisonment for count II (possession of firearm by prohibited person, Class ID felony), 1 year of imprisonment for count III (obstructing peace officer, Class I misdemeanor), and 30 days' imprisonment for count IV (leaving scene of accident, Class II misdemeanor). The sentences for counts I, III, and IV were to run concurrently to each other, but consecutively to the sentence for count II. Cornell was given 223 days' credit for time served. The court further ordered that Cornell's operator's license be revoked for 2 years, Cornell forfeit $3,130 in U.S. currency seized by law enforcement, and Cornell submit a DNA sample. The court also found that costs were uncollectible.

No direct appeal was filed following the entry of the March 11, 2021, sentencing order. According to the State, at the time Cornell entered his no contest pleas, Cornell waived his right to a direct appeal as part of the plea agreement.

POSTCONVICTION PROCEEDING

On February 16, 2022, Cornell filed a pro se "Verified Motion to Vacate and Set Aside Convictions" pursuant to the "Nebraska State Postconviction Relief Act, Neb. Rev. Stat. §§ 29-3001 to 29-3004." (Emphasis in original.) He alleged that his trial counsel was ineffective because he advised Cornell to enter a no contest plea for Count II, possession of a deadly weapon by a prohibited person, even though Cornell was "actually innocent."

On February 18, 2022, the district court entered an order on its own motion denying Cornell's application to proceed IFP. (A copy of Cornell's initial application to proceed IFP is not in our record.) The court's order stated the following:

[T]he Court on it's [sic] own motion denies the defendants' [sic] application to proceed [IFP] on the grounds that the applicant is asserting legal positions which are frivolous or malicious. The Court's reasons, findings and conclusions follow.

The defendant failed to timely appeal his conviction and sentence. The action is captioned as a Petition to Vacate and Set Aside Conviction but makes no claim that DNA or forensic evidence would exonerate him. See Neb. Rev. Stat. Section 29-4123.

The defendant's request to proceed [IFP] is denied.

Cornell appeals from the district court's February 18, 2022, order denying him IFP status related to his underlying postconviction action.

## ASSIGNMENT OF ERROR

Cornell assigns, restated, that the district court erred when it denied his request to proceed IFP in his postconviction action.

## STANDARD OF REVIEW

A district court's denial of in forma pauperis status is reviewed de novo on the record based on the transcript of the hearing or written statement of the court. Neb. Rev. Stat. § 25-2301.02(2) (Reissue 2016); *Sabino v. Ozuna*, 303 Neb. 318, 928 N.W.2d 778 (2019).

## ANALYSIS

This appeal is before us only on the issue of whether the district court properly denied Cornell's application to proceed IFP on his underlying postconviction action. There has been no final order entered as to the postconviction action itself. Nevertheless, Cornell has a right to interlocutory appellate review of an order denying IFP status to commence a case. See *Mumin v. Frakes*, 298 Neb. 381, 904 N.W.2d 667 (2017).

### IFP Status in Postconviction Cases

We initially note that no prepayment of a filing fee is required in postconviction cases. See *Mumin v. Frakes, supra*. When considering prepayment of filing fees in the context of a habeas corpus action, the Nebraska Supreme Court pointed out that no prepayment of filing fees and costs are required when a petition for writ of habeas corpus is filed, and that a "similar rule applies to filing motions for postconviction relief in criminal cases." *Id*. at 397, 904 N.W.2d at 679. See, also, *State v. Jackson*, 15 Neb. App. 523, 730 N.W.2d 827 (2007) (prepayment of fees and costs not required in postconviction cases). Therefore, Cornell was able to file his postconviction action without the need to prepay the filing fee and the matter could have proceeded without deciding Cornell's IFP status as a threshold matter. As stated in *Mumin v. Frakes*, "while it was not improper for the district court to rule on the IFP application as a threshold matter, doing so was not necessary to allow Mumin to file or proceed with his habeas petition." *Id*. at 397, 730 N.W.2d at 679. "And once the district court concluded—in the context of its IFP review—that the legal positions asserted in the habeas petition were frivolous, it would have been more efficient for the district court to rule directly on the merits of the habeas petition at the same time it ruled on the IFP application." *Id*. "In cases where no prepayment of fees or costs is required, deferring the ruling on an IFP application would permit the court to reach the merits of the case more quickly and without potentially lengthy delays caused by interlocutory appeals from orders denying IFP." *Id*.

We are faced with a similar situation here in that the district court denied Cornell's application to proceed IFP without simultaneously entering a final order as to the postconviction

- 4 -

action. As indicated in *Mumin, supra*, it was not improper for the district court to do so, but it would have been more efficient for the court to rule directly on the merits of the postconviction action at the same time it ruled on the IFP application. However, since addressing the IFP application as a threshold matter was not improper, we proceed to review the court's February 18, 2022, order denying Cornell's request to proceed IFP.

Under the IFP statutory scheme, § 25-2301.02(1) states in pertinent part:

An application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application (a) has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious. The objection to the application shall be made within thirty days after the filing of the application or at any time if the ground for the objection is that the initial application was fraudulent. Such objection may be made by the court on its own motion or on the motion of any interested person. The motion objecting to the application shall specifically set forth the grounds of the objection. An evidentiary hearing shall be conducted on the objection unless the objection is by the court on its own motion on the grounds that the applicant is asserting legal positions which are frivolous or malicious. If no hearing is held, the court shall provide a written statement of its reasons, findings, and conclusions for denial of the applicant's application to proceed in forma pauperis which shall become a part of the record of the proceeding.

When an IFP application is denied, the applicant has two choices: (1) to proceed with the matter upon payment of fees, costs, or security or (2) to appeal the order denying IFP. *Mumin v. Frakes, supra*. Cornell timely appealed from the district court's February 18, 2022, order denying his request to proceed IFP in his postconviction action. The district court properly granted IFP status to Cornell on appeal. See *Mumin v. Frakes, supra* (when IFP application is denied and applicant seeks leave to proceed IFP to obtain appellate review of that denial, trial court does not have authority to issue order that would interfere with such appellate review).

CORNELL'S INITIAL IFP REQUEST WAS PROPERLY DENIED

Cornell claims the district court denied him IFP status solely for the reason that he failed to pursue a direct appeal. While the district court did reference the lack of a direct appeal as a basis for denying IFP status, the court's order also stated that it was denying IFP "on the grounds that the applicant is asserting legal positions which are frivolous or malicious." We agree with the district court that Cornell's underlying postconviction action asserts legal positions that are frivolous. A frivolous legal position is one wholly without merit, that is, without rational argument based on the law or on the evidence. *State v. Carter*, 292 Neb. 16, 870 N.W.2d 641 (2015).

Cornell's claim of ineffective assistance of trial counsel challenges only his conviction for possession of a firearm by a prohibited person. Cornell contends that the firearm found in the backseat of the vehicle he was driving was insufficient evidence to show constructive possession and that therefore any "conviction premised on it is void." Brief for appellant at 7. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Thus, when a defendant pleads guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made

and whether it was the result of ineffective assistance of counsel. *Id*. A motion for postconviction relief cannot be used to secure review of issues that were or could have been litigated on direct appeal. *Id*.

In his postconviction pleading, Cornell claimed his trial counsel was ineffective for advising him to enter a no contest plea "in matter of weapons offense for which [Cornell] is actually innocent." He claimed he was "'actually innocent'" of the weapon possession charge because he "never acquired either legal, actual or constructive possession of the firearm found in the vehicle's rear seat." He claimed it belonged to his passenger. Cornell claims that his no contest plea "cannot be said to have waived entitlement to 'actual innocence protections' because that plea itself was accepted unconstitutionally, without the benefit of sufficient evidence to support the constitutionally required factual basis needed to justify such a waiver." He also claimed that being convicted and incarcerated "while actually innocent violates the Eighth Amendment prohibition against infliction of cruel and unusual punishment," and this makes his sentence "illegal and void."

Cornell's arguments are wholly without merit and are, therefore, frivolous. Neb. Rev. Stat. § 28-1212 (Reissue 2016) provides that the presence of a firearm in a motor vehicle other than a public vehicle "shall be prima facie evidence that it is in the possession of and is carried by all persons occupying such motor vehicle at the time such firearm or instrument is found, except that this section shall not be applicable if such firearm . . . is found upon the person of one of the occupants therein." Additionally, constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of arrest or by a showing of dominion over it. *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021) (defendant passenger of vehicle convicted of possession of deadly weapon by prohibited person when drawstring bag containing handgun and drugs were found in rear cargo area of vehicle).

The factual basis supporting Cornell's plea and conviction revealed that Cornell admitted to being the driver of the vehicle during the pursuit, and that a search of the vehicle turned up controlled substances, U.S. currency, drug ledgers, and an AR-15. The assault rifle was lying across the backseat and was in Cornell's "easy access and possession." A person commits the crime of possession of a deadly weapon by a prohibited person if he or she possesses a firearm and he or she has previously been convicted of a felony. See Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022). See, also, *State v. Warlick, supra*; *State v. Sherrod*, 27 Neb. App. 435, 932 N.W.2d 880 (2019) (defendant had constructive possession of firearm found in bedroom; constructive possession applies to crime of possession of firearm by a felon and means possessor did not have actual possession but was aware of the presence of the contraband and had dominion and control over it). Cornell does not dispute having a prior felony and he possessed the assault firearm under both statutory and constructive possession law.

As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument to the trial court. *State v. Jaeger, supra*. Cornell was seeking postconviction relief based on his alleged theory that his trial counsel was ineffective because it was "illegal" for Cornell to be convicted of the firearm possession charge because constructive possession is insufficient to prove possession of a firearm by a prohibited person. Based on the legal principles set forth above, Cornell's claim is wholly without merit, that is, without rational argument based on the law or on the evidence. See *State v. Carter, supra*. Cornell's trial counsel could not be ineffective for failing

to raise such an argument. Although our reasoning differs from that of the district court, we agree that Cornell's postconviction claim asserts legal positions that are frivolous.

CONCLUSION

We affirm the district court's February 18, 2022, order denying Cornell IFP status related to his postconviction action. Additionally, Cornell has filed a "Motion to Remand for Appointment of Counsel" "for the limited purpose of appointing professional counsel to assist [Cornell] by representing claims set for oral arguments" in this court. Since we are disposing of this appeal without oral argument, Cornell's motion is overruled as moot.

AFFIRMED.